Filed 7/17/15  P. v. Leon CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067306 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN334157) |
| FRANCO LEON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Franco Leon of resisting an executive officer, a felony, (Pen Code, § 69;[1] count 1), and possessing heroin, a misdemeanor (Health & Saf. Code, § 11350, subd. (a); count 2). The trial court found true that Leon had a prior serious/violent felony conviction, residential burglary (§ 459). The trial court denied Leon's motion to strike the prior felony conviction and sentenced Leon to 32 months in prison, twice the lower term for count 1.[2] (§ 667, subd. (e)(1).)

Leon appeals his sentence. He contends that the trial court abused its discretion in refusing to strike his prior felony conviction (§ 667, subds. (b)-(i)). The trial court denied the motion to strike the prior strike because of the risk of harm Leon caused the officers in the instant case, his extensive criminal history, and his ongoing drug activity. We find no abuse of discretion and affirm.

## FACTUAL BACKGROUND

Since this appeal does not challenge either the admissibility or the sufficiency of the evidence to support the convictions, we set forth only the facts relevant to the trial court's sentencing determination.

The instant offense occurred on July 8, 2014. Michael Duong and John Robledo, deputy sheriffs with the San Diego County Sheriff's Department were dispatched to investigate two males sleeping in a truck. The truck was parked in a residential area with an elementary school nearby. The bed of the truck was full of trash and other items,

---

[1]      All statutory references are to the Penal Code unless otherwise indicated.

[2]      As to count 2, the trial court gave Leon credit for time served.

2

including a bicycle. Deputy Duong testified that it looked like "they were moving, living out of it, or hoarding."

Jorge Lopez was sitting in the driver's seat and Leon was sitting in the passenger seat. Both men had their heads down and appeared to be sleeping. Duong noticed a bottle cap and a hypodermic needle with a black residue substance in them. The needle was next to Leon's left leg on the seat next to him. Lopez's pants were down by his thighs.

Robledo put on latex gloves and knocked on the driver's side window. Lopez and Leon appeared to be on the "nod"; they were groggy and had trouble answering questions.

Leon covered the needle with his left hand in an attempt to hide it. Duong lost sight of it, asked Leon to step out of the vehicle, and opened the door. Robledo saw Leon exit the truck with a needle in his left hand.

Leon stepped out and turned away from Duong. Duong grabbed his arms, trying to determine where the needle was. Leon put his left hand in his left pant pocket and then spun around and hit Duong in the chest with his left elbow. Leon then ran towards the rear of the truck.

Robledo yelled, "He has got a needle," and ran towards the rear of the truck too. Leon ran with his arms out, flinging them at Robledo, and knocked Robledo's radio earpiece and hat off. Robledo put his right hand over Leon's neck to try to restrain him, but Leon resisted and pulled Robledo towards the street.

Together, Duong and Robledo pulled Leon down to the ground, stomach down. Leon got on his hands and knees attempting to get up. Duong struck Leon with his right knee in his left rib area, and Robledo struck Leon in the right side of his thigh three times with his knee. Leon continued to resist and flailed his left arm "wildly" left and right to prevent Duong from grabbing it and handcuffing him. His right arm reached for his waistband pocket area. Duong punched Leon three times in his left jaw. After the third time, Leon said, "I give up. Stop." Robledo got on top of his legs to try to get a hold of his arms, but Leon resisted by kicking his feet, flailing his arms, and slapping Robledo's hands away. Robledo testified that Leon's hands were strong and that he kept stiffening them and pulling them away. Duong and Robledo managed to turn Leon on to his stomach and handcuff him by striking him again.

Duong found a hypodermic needle on the ground where the struggle had taken place. The metal part of the needle was bent. He also found a plastic bindle wrapper on the ground with a black tar substance in it. The crime lab confirmed it contained .10 grams of tar heroin.

Doung next contacted Leon at the hospital. Leon said he had used heroin for 20 years and admitted to having used "a little" heroin the night before. A blood sample taken from Leon tested positive for methamphetamine and heroin use.

After the struggle, Robledo took off his glove and noticed that he had a cut on his left index finger. Robledo believed the cut on his finger was from the needle Leon had. He had also scraped his knees during the struggle. Robledo went to the hospital and had

4

four vials of blood drawn. He had follow-up appointments for three months to test and monitor him for HIV and hepatitis C. He was ultimately found clear of any disease.

PROCEDURAL BACKGROUND

An amended information charged Leon with resisting an executive officer (§ 69; count 1), possessing heroin (Health & Saf. Code, § 11350, subd. (a); count 2), and 11 prior convictions. A Proposition 47 petition was filed to reduce the prior felony convictions to misdemeanors,[3] with the exception of a 1999 residential burglary conviction and a 2008 vandalism conviction.

Leon was convicted of counts 1 and 2. Prior to sentencing, Leon filed a motion to strike the prior residential burglary conviction for purposes of sentencing pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

In a separate proceeding, the trial court found that Leon's strike prior for residential burglary was proven. In deciding whether to strike the prior conviction, the trial court considered a presentencing report prepared by the probation department. The report contained Leon's criminal and personal history.

According to the facts set forth in the probation report, and documents produced to prove the prior conviction, the strike prior occurred in 1999. Leon and a codefendant broke into two homes. The first home was occupied when they entered, and they

---

3       A Proposition 47 petition is pending to reduce the following felonies to misdemeanors: a felony second degree burglary in 1995, a felony drug possession offense in 1995, a felony drug possession offense in 1997, a felony attempted drug possession offense in 2008, and a felony drug possession offense in 2014. Defendant's request for this court to take judicial notice of the Proposition 47 petitions has been granted.

attempted to steal money and personal property by ransacking the home and assembling property around the front doorway. The second home was vacant, with only a toolbox with a few tools in the living room.

The probation report also listed Leon's extensive criminal history. As a juvenile, Leon was convicted of second degree burglary in 1990. As an adult, his criminal convictions span from February 1995 to July 2014.

Leon committed petty theft on February 28, 1995 (§§ 484-488), and soon after second degree burglary on April 4, 1995 (§ 459). Less than a month later, on April 24, 1995, he was arrested for first degree burglary (§ 459), possessing burglary tools (§ 466) and a narcotic (Health & Saf. Code, § 11350, subd. (a)), and being under the influence of a controlled substance (*id.*, § 11550, subd. (a)). He was sentenced to three years in prison, was granted probation, and had his probation revoked three times. It appears that he was returned to custody for almost two years and committed his next offenses, falsely identifying himself to peace officers (§ 148.9, subd. (a)), petty theft (§ 484), and being under the influence of a controlled substance (Health & Saf. Code, § 11550) in March 1997. He was sentenced to 16 months in prison. In January 1999, he committed grand theft (§ 487, subd. (a)) and burglary (§ 459) and received a two-year sentence.

Leon's next offenses, vandalism (§ 594, subd. (a)) and petty theft (§ 484), occurred on September 14, 2008. Approximately two months later, on November 24, 2008, before he was convicted and sentenced for these crimes, he was arrested for attempted possession of a controlled substance (§ 664; Health & Saf. Code, § 11350, subd. (a)) and giving false information to a peace officer (§ 148.9, subd. (a)). It appears that he served

6

consecutive sentences, totaling 32 months as a result. In November 2010, he was found to be under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)) and sentenced to another 120 days in jail. In May 2014, two months prior to the instant offense, he was convicted of possessing a narcotic (*id.*, § 11350, subd. (a)), a controlled substance (*id.*, § 11377, subd. (a)), unlawful paraphernalia (*id.*, § 11364.1, subd. (a)) and a controlled substance without a prescription (*id.*, § 11375, subd. (b)(2)), and being under the influence of a controlled substance (*id.*, § 11550, subd. (a)).

The probation department also set forth Leon's personal history and reported that Leon is 40 years old and hangs out with friends he describes as "functioning addicts." He has an eight-year-old son that he has not seen in approximately three years. He has a supportive relationship with his mother and four siblings. His father passed away in 2012 from complications stemming from stomach cancer. One brother was arrested for a burglary related offense and another brother for a substance abuse related offense.

Leon dropped out of high school in the 12th grade, obtained his GED in 2009, and has taken some classes at Palomar College. He has worked in construction as a street sweeper, forklift operator, part and counter person, as tank cleaner on a naval base, and also as a maintenance worker, cleaning and restoring offices. He has been unemployed for a year.

Leon began using marijuana at the age of 13, methamphetamine at 16, and heroin at 17. He describes his addictions as "not very bad." He attended an inpatient drug treatment program at both the Fellowship Program and Nosotros. The first time he attended the Fellowship Program, he was there for a month. The second time, for two

7

months, and the third time, for six months. He also attended Nosotros for three months. He has not been in a drug treatment program since 2010.

The report stated that Leon relapsed in 2012 and had been using heroin and methamphetamine daily since the current offense. Leon stated that he doesn't think he needs a drug treatment program. Leon hopes to get his life together, further his education, get a career and joint custody of his son.

The probation report did not list any mitigating factors for purposes of sentencing. However, it listed several aggravating factors: his prior incarceration; his numerous convictions as an adult; his unsatisfactory performance on parole and probation; the fact that he was on probation and under the influence of and in possession of drugs when the instant offense occurred; and the threat of bodily harm he created in this case due to his struggle with the officers while in possession of a needle.

The probation officer found several additional facts disturbing. The instant offense is Leon's seventh felony conviction, and despite the risk of the inclusion of prior prison sentences, Leon has not altered his criminal behavior. Leon has shown a propensity for violence while under the influence of a controlled substance; and he does not believe he is in need of substance abuse treatment, despite his numerous prior drug related convictions and the fact that he was under the influence and in possession of a controlled substance in this case.

The probation officer concluded that the Leon had "engaged in violent conduct that indicates a serious danger to society," and that Leon's "actions in the instant offense coupled with his repeated violations of the law clearly indicate he is a threat to society."

8

The probation officer recommended, "[f]or the safety of the community," four consecutive years for the current felony conviction. The report stated that Leon is ineligible for a grant of probation. His overall performance on probation has been "extremely poor." His grant of probation has been revoked five times. He had only been on probation for two months before being arrested for the current offense. In addition, while on parole between May 1997 and December 2004, he was returned to custody on four occasions.

The trial court denied the motion to strike the prior strike. Based on his strike prior, the trial judge sentenced Leon to 32 months in prison, twice the lower term for count 1. Leon appeals.

DISCUSSION

A.      *Legal Principles*

Pursuant to section 1385, subdivision (a), when a person has been convicted of a felony and a prior serious and/or violent felony, a trial court may strike the prior serious/violent felony conviction for sentencing purposes under the "Three Strikes" law in " 'furtherance of justice.' " (*Romero, supra,* 13 Cal.4th at p. 504; *People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).) The Three Strikes law compels longer sentences for career criminals (*People v. Strong* (2001) 87 Cal.App.4th 328, 338) and dictates the sentencing requirement whenever a defendant has at least one prior qualifying strike. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) A trial court may depart from the sentencing norm prescribed by the Three Strikes law only " 'in furtherance of justice.' " (*Williams,* at pp.159, 158.) However, to do so, a trial court must be able to articulate

9

reasons why the " ' "defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, at p. 377; *Romero,* at p. 508 [explaining that "the order striking such allegations simply embodies the court's determination that, ' "in the interest of justice" defendant should not be required to undergo a statutorily increased penalty' "].)

In determining whether the dismissal of a strike prior would be " 'in furtherance of justice,' a trial court or reviewing court, must consider, in light of the nature and circumstances of the current and prior felony convictions, the defendants background, character, and prospects for rehabilitation and whether these indicate that the defendant should be deemed outside the spirit of the Three Strikes law and "should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra,* 17 Cal.4th at p. 161.) " 'At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." ' " (*Romero, supra,* 13 Cal.4th at pp. 530-531.)

A trial court's decision on a motion to strike a qualifying prior conviction is reviewed for an abuse of discretion. (*Carmony*, *supra,* 33 Cal.4th at p. 375.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 376-377.)

" '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Carmony*, *supra,* 33 Cal.4th at p. 378.) " ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Id.* at p. 377.) " '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id.* at p. 378.)

Nevertheless, the standard of review on appeal is deferential, not empty. (*Williams, supra,* 17 Cal.4th at p. 162.) The question before this court is whether the trial court's decision " 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*Ibid.*) When the relevant factors "manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony*, *supra,* 33 Cal.4th at p. 378.)

B.      *Analysis*

Here, in deciding Leon's motion to strike the prior conviction, the trial court considered defense counsel's arguments in support of the motion, the probation officer's

report and recommendations, and the People's sentencing brief and opposition to the motion. The trial court also reviewed Leon's "prior history from its inception and from the time that he did suffer the strike." In denying the motion to strike, the sentencing judge stated the following:

> "The defendant could have avoided probably even a felony arrest as it turned out under [Proposition] 47, maybe not the felony arrest, but felony consequences had he just abided by the deputies' commands. He did not. What best can be described from the evidence in the case, he did engage in confrontation with the officers, which resulted in the deputy and the defendant ending up in the middle of the street. [¶] There was some degree of injury to at least one of the officers. I believe that whether it resulted from the needle that the defendant had or some other factor, there was a cut to Deputy Robledo's knee and his left hand. Not knowing whether that came from the needle or otherwise. That officer -- I believe the other officer also had to have substantial amount of blood work to see if there was any transfer of any harmful agents to their bodies. [¶] And based on the defendant's record, the [c]ourt is not going to strike the strike. It's a substantial record. He has not removed himself from drug activity, which is still ongoing. And he chose to get involved in the physical altercation with law enforcement. [¶] So the [c]ourt does not feel that this case warrants and falls within the parameters with *Romero* where the court should grant relief."

These statements indicate that the trial court was aware of its discretionary authority, but elected not to exercise its discretion and dismiss the previous strike for purposes of sentencing. The court based its decision on Leon's choice to confront the officers in this case, physically resist arrest while in possession of a hypodermic needle, and expose the officers' to a serious risk of harm. The court also relied on Leon's sizeable criminal history and continuous drug use in making its decision. Based on this record, a reasonable judge could very easily conclude that Leon falls within the spirit of the Three Strikes law and should be sentenced in accordance with it.

12

Nonetheless, Leon argues that the trial court abused its discretion in declining to dismiss his strike prior for sentencing purposes because (1) he is not a violent criminal, (2) he was under the influence of drugs during the instant offense and it was not considered a mitigating factor at sentencing, and (3) his criminal record is not "substantial," since most of his previous convictions will be reduced to misdemeanors under Proposition 47.

1.    Defendant's Crimes and Conduct While Under the Influence of Drugs Pose a Substantial Risk of Harm to Policemen and the Public

On appeal, Leon argues that he is not a violent criminal. Specifically, he argues that in the instant offense, he was merely noncompliant, and that the prior strike was also a nonviolent offense, therefore he is not the type of offender at which the Three Strikes law is aimed.

A sentence that conforms to the Three Strikes law sentencing requirement is presumed to be "both rational and proper."[4]  (*Carmony, supra*, 33 Cal.4th at p. 378.) " '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.]  To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing

_____

[4]    "While a court must explain its reasons for striking a prior [citations], no similar requirement applies when a court declines to strike a prior [citation]. 'The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the [T]hree [S]trikes law.' "  (*In re Large* (2007) 41 Cal.4th 538, 550.)

13

court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, at p. 377.)

The trial court here found no reason to exempt Leon from the three strikes sentencing scheme. In deciding not to strike the prior conviction, the trial court specifically referred to Leon's confrontation with the officers in this case and the months of testing that at least one of the officers had to undergo as a result of Leon's actions. Despite Leon's attempt to diminish the seriousness and violent nature of the current offense, the record shows that in a desperate attempt to evade the officers in this case Leon engaged in a physical altercation with both officers while in possession of a hypodermic needle, creating a serious risk of harm for the officers.

Leon resisted arrest so strongly and persistently that the officers had to subdue him by physically striking him. Leon also reached for his waistband pocket area and flailed his arms wildly in an attempt to evade the officers. The hypodermic needle was also found near where the struggle had taken place, with the metal part bent, and Robledo found a cut on his finger that could have been caused by the needle. The fact that Robledo eventually, after three months of testing, was found to be free of any disease does not make Leon's conduct any less serious or violent.

The same potential for serious injury or death existed during the commission of his prior strike offense, the residential burglary. Residential burglary is recognized as an offense that poses a substantial risk to human life because of "the danger that the intruder

14

will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." (*People v. Estrada* (1997) 57 Cal.App.4th 1270, 1281.) The fact that a residential burglary is committed under fortuitous circumstances where no one is actually injured or no one is at home does not detract from the highly invasive and risk-fraught nature of the crime.

Moreover, Leon has resorted to violence on several occasions to escape arrest. In this case, he vehemently resisted arrest while in possession of a hypodermic needle. In 2008, after being arrested when heavily intoxicated for violating a restraining order, he escaped the rear of a police car by breaking the car window while handcuffed. These incidents show that there is a high probability of serious injury or death every time Leon is apprehended for a crime and that he is a threat to officers charged with ensuring his compliance with the law.

The probation officer reported that Leon has shown a propensity for violence while under the influence of a controlled substance and stated that "defendant's actions in the instant offense coupled with his repeated violations of the law clearly indicate he is a threat to society." The probation officer also recommended four consecutive years for the current felony conviction, "[f]or the safety of the community."

Since the record demonstrates that Leon was violent in resisting arrest in this case, Leon is a drug addict and prone to violence when under the influence of drugs, and has reacted violently when arrested, the imposition of a longer sentence in accordance with the Three Strikes law is appropriate.

15

2.      Leon's Drug Addiction Is Not a Mitigating Factor

Leon contends that the fact that he was under the influence of drugs affected his judgment in the instant offense and should have been considered a mitigating factor in determining his sentence. First, we note that whether Leon was intoxicated during the commission of the current felony is relevant to his culpability for the offense. Leon has already been convicted and, on appeal, Leon is not contesting the conviction itself, but his sentence for the conviction. Therefore, whether he was intoxicated during the commission of the current crime is irrelevant to this sentencing appeal.

Second, in a sentencing determination, a "drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511.) "As a policy matter, when a defendant has a drug addiction or substance abuse problem, [and] the defendant has failed to deal with the problem despite repeated opportunities, . . . shows little or no motivation to change his life style, and . . . the substance abuse problem is a substantial factor in the commission of crimes, the need to protect the public from further crimes by that individual suggests that a longer sentence should be imposed, not a shorter sentence."[5] (*Reyes, supra,* 195 Cal.App.3d at p. 963.)

---

5      "For example, the felony drunk driver who is suffering from an uncontrolled alcoholism should be sentenced to a longer term, not a shorter one, in order to prevent him from driving under the influence again. The robber or burglar who is taking either drugs or money to buy drugs to support his addiction, and who shows little incentive or ability to deal with his drug abuse problem, should be prevented from committing further burglaries or robberies for a longer time, not a shorter time." (*People v. Reyes* (1987) 195 Cal.App.3d 957, 963 (*Reyes*).)

16

In fact, if a substance abuse problem is accompanied by dangerous criminal conduct and violations of parole or probation, the addiction is an aggravating factor indicating a longer sentences is proper "because it suggests a high probability of further depredations on the public whenever the defendant is again out of custody." (*Id.* at p. 964.)  This does not mean that a drug addiction can never be a mitigating factor, but a trial court must make a separate finding that the defendant's culpability is reduced because of it.[6] (*Id.* at pp. 963-964.)

Here, the trial court made no such finding and the record would not support it. The record demonstrates that Leon has had a life-long substance abuse problem, beginning at the age of 13 and he is now 40 years old.  Leon has had numerous drug-related convictions, and his past incarcerations have not altered his criminal behavior.  In the instant case, Leon was under the influence of and in possession of a controlled substance.

Leon's attempts at rehabilitation have been unsuccessful.  He has attended inpatient drug treatment programs for months at a time but has always returned to his

---

6     (See, e.g., *Reyes, supra,* 195 Cal.App.3d at p. 964 ["We can readily conceive of defendants who have made a serious effort to cope with their substance abuse problems but who, having committed a crime during a time of relapse, might well be considered for a lower term under those rules.  A drug dependency growing out of medical treatment might be considered to reduce culpability under some circumstances.  There may be other circumstances where the defendant's alcohol or drug addiction might be considered in mitigation.  But, where that addiction has simply provided the defendant with a continuing incentive or excuse to commit crimes, we see no reason why that addiction should be considered as a circumstance in mitigation."].)

drug habit. He has not been in a drug treatment program since 2010, and admitted that, since the current offense, he has been using heroin and methamphetamine daily.

Leon is in denial as to the severity of his substance abuse problem. According to the probation officer, Leon described his addictions as "not very bad" and stated that he didn't think he needed a drug treatment program.

Leon's previous performances on probation and parole have been unsatisfactory. He has had numerous probation revocations and was on probation when the instant offense was committed. He was also returned to custody on four occasions while on parole between May 1997 and December 2004.

Finally, the probation report did not list any possible circumstances in mitigation and only seven factors in aggravation, including his propensity for violence while under the influence of a controlled substance and the threat of great bodily harm involved in this case.

Although Leon seeks to portray himself as a victim of drugs, he is unwilling to pursue treatment, has demonstrated a propensity for violence when under the influence of drugs, and is a repeat offender that has not learned from his past incarcerations. Because this record is devoid of mitigation, we cannot say that the trial court's ruling fell outside the bounds of reason under applicable law and relevant facts.

3.    Leon Is a Revolving-Door Criminal

Leon argues that (1) because his prior strike occurred 15 years ago it should have been dismissed for purposes of sentencing, and (2) the trial court improperly considered

18

his criminal record to be "substantial" because most of his previous offenses will be reduced to misdemeanors pursuant to Proposition 47.

A trial court may not strike a strike prior merely because it is remote, it must look at the defendant's behavior from the time of the prior felony to the current offense. (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) In addition, where a defendant has continuously committed criminal offenses during the period from the strike prior until the current offense, the court can consider even minor offenses to determine whether the defendant comes within the spirit of the Three Strikes law. (*Williams, supra*, 17 Cal.4th at p. 163.)

The trial court here properly took into account Leon's record of criminal offenses, including the felonies that may be reduced to misdemeanors.[7] Although the strike prior occurred 15 years ago, Leon has not refrained from criminal activity. During this time he has been either in prison, on probation, paroled, in a treatment program or committing yet another offense. In fact, when he was arrested for the current offense on July 8, 2014, Leon was on parole for drug offenses he had been arrested for only two months earlier, on May 9, 2014. In addition, his latest offense involved violence and a threat of substantial harm to the officers. We thus find that the trial court correctly determined that Leon's "substantial record" did not warrant dismissal of the strike prior.

Given Leon's severe substance abuse problem, his character and poor choice of companions, his unsuccessful treatment and minimal prospect of rehabilitation, his long

---

[7] We note that the Proposition 47 petitions are still pending and that, even if granted, our analysis remains the same.

and continuing record of offenses and violent conduct, Leon cannot be deemed to be outside of the spirit of the Three Strikes law. Finally, the probation report and the record on appeal are devoid of any mitigating factors that would exempt Leon from the required sentence. Therefore, we conclude under the deferential standard of review that the trial court was not arbitrary or capricious in denying the motion to strike the prior strike. Based on this record, we find that the trial court properly reviewed the matter and reasonably concluded that Leon was not outside the spirit of the Three Strikes law.

## DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.