[No. C001603. Third Dist. Oct. 13, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR CARLOS REYES, Defendant and Appellant.

COUNSEL

Bryce M. Caughey, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Maureen S. Dunn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HARVEY, J.* —After a jury trial, defendant was convicted of one count of robbery (Pen. Code, § 211)[1] but acquitted of the special allegation that during the robbery he inflicted great bodily injury on a person who was 60 years of age or older. (§ 1203.09, subd. (a).) Defendant was sentenced to the upper term of five years. Defendant appeals, contending that the court erred in failing to consider defendant's alcoholism as a circumstance in mitigation, by imposing the upper term for inflicting great bodily injury when he

---

*Assigned by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise specified; all rule references are to the California Rules of Court.

was acquitted of that charge by the jury, by instructing the jury with CALJIC No. 2.21, and by imposing a restitution fine of $300. We affirm.

So far as it is pertinent to this appeal, the evidence showed that defendant hit the 74-year-old victim, Wilfred Marsden, on the head as Marsden bent down to put his key into the lock of his apartment house. The blow knocked Marsden down, and defendant then alternately beat Marsden and rummaged through his pockets, taking Marsden's change purse and wallet containing $330. Marsden sustained bruises on his head, his nose was cut and required three stitches, he had a cut running back from his lip towards his right ear that required ten stitches to close, and he spent about five hours in the hospital while his wounds were treated.

A neighbor, Dow Patten, interrupted defendant's attack on Marsden, whereupon defendant ran, only to be caught by Patten after a substantial chase. The police arrived and took defendant into custody. When taken into custody, defendant had a strong odor of alcohol on his person, and appeared to be intoxicated; nevertheless, he had control over his arms and legs, spoke sensibly, was able to get in and out of the patrol car, and responded appropriately to questions. A blood test showed defendant's blood alcohol content at .11 percent.

The probation report noted that "defendant admits to a problem with alcohol abuse. He described binges, maintains that he experiences blackouts, and drinks anything and everything." It also reported that defendant had three convictions for driving under the influence of alcohol. ▪ Defendant complains that the trial court failed to consider alcoholism as a mitigating circumstance, citing *People v. Simpson* (1979) 90 Cal.App.3d 919, 927 [154 Cal.Rptr. 249].

The *Simpson* case does not hold that alcoholism must always be considered as a mitigating factor. The court said, "the trial court must consider the *possibility* that his alcoholism is a circumstance in mitigation within the meaning of rule 423, and must then weigh this factor along with the other relevant circumstances." (*Id.,* at p. 928, italics added.) In *People v. Regalado* (1980) 108 Cal.App.3d 531, 540 [166 Cal.Rptr. 614], the same court that decided *Simpson* explained its decision as follows: "The peculiar and somewhat pathetic facts of *People v. Simpson* (1979) 90 Cal.App.3d 919 . . . demonstrate by way of contrast [to the facts in *Regalado*] a situation in which a sentencing court must give the influence of an individual's addictive need its full mitigating weight. In *Simpson* defendant was an alcoholic who, after having shared approximately 10 quarts of beer and a fifth of rum with his companion, broke the window of a liquor store in order to obtain more alcohol. Police followed a trail of broken bottles leading from the store and

found the defendant hiding in the identical place where he had hidden before when he had previously burglarized the same liquor store. Without question and as a matter of law, the defendant in *Simpson* 'was suffering from a mental or physical condition that significantly reduced his culpability for the crime.' (Rule 423(b)(2).) Therefore, 'his conduct was partially excusable for some other reason not amounting to a defense.' (Rule 423(a)(4).)"

In *Regalado* the defendant was on probation, and as a condition of probation was on an in-patient drug rehabilitation program. He left without permission and within a few hours committed the burglary for which he was convicted. The trial court imposed the upper term for the offense. One of the arresting officers believed the defendant was under the influence of a drug at the time of his arrest, and the other reached the opposite conclusion. But they agreed that the defendant did not require assistance to stand, did not appear disoriented or confused, was able to converse with the officers, and was cooperative. His possession of burglary equipment when arrested showed that he was capable of premeditating and planning the commission of the crime. In the light of these circumstances, the same court that decided *Simpson* decided that the upper term was properly imposed in *Regalado*.

Here, too, the record shows that the court at least considered the possibility that alcoholism might partially excuse defendant's behavior. That is, the record shows that the court read and considered the probation report. Defense counsel specifically argued the defendant's alcoholism was a mitigating factor. But, as in *Regalado,* the court rejected the possibility that defendant's behavior was partially excusable. The record supports that determination. Defendant had only a .11 blood alcohol level. Like the defendant in *Regalado,* defendant here did not require assistance to stand, did not appear disoriented or confused, and was able to converse intelligently with the arresting officers. As in *Regalado,* the record here does not compel a conclusion that defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime. (See *People* v. *Regalado, supra,* 108 Cal.App.3d at p. 540.)

We thus join a growing number of courts that have cited *Simpson* only for the purpose of distinguishing it.[2] Some of these cases are indistinguishable substantively from *Simpson*.

---

[2] *People* v. *Eades* (1979) 95 Cal.App.3d 688 [157 Cal.Rptr. 223] (upper term for second degree murder despite the "defendant's difficulty with alcohol"); *People* v. *Dixie* (1979) 98 Cal.App.3d 852 [159 Cal.Rptr. 717] (second degree murder, upper term imposed despite the defendant's intoxication and alcoholism); *People* v. *Jackson* (1980) 103 Cal.App.3d 635 [163 Cal.Rptr. 115] (burglary, upper term imposed despite the defendant's drug addiction); *People*

In *Simpson,* the defendant burglarized a liquor store, stealing liquor and cigarettes. He was placed on three years probation, sentenced to a county jail disciplinary term, and required to participate in alcoholic counseling programs. Within two months, he escaped from the sheriff's rehabilitation facility and ten weeks later burglarized the same liquor store, again stealing a quantity of liquor and cigarettes.

Similarly, in *People* v. *Regalado,* the defendant was on probation for burglary, one condition of the probation being his placement in a drug-rehabilitation program. Simpson escaped from the sheriff's rehabilitation facility; Regalado left the drug-rehabilitation facility in violation of the court's probation order, and the same night he committed a burglary. One of the arresting officers believed him to be under the influence of drugs at the time of the offense. Yet the court rejected the *Simpson* holding and found that Regalado's repeated failure to deal with his addiction, despite the opportunity provided through probation supervision, justified the court in treating the probation violation and repeated criminal conduct as aggravating circumstances.

In *People* v. *Reid, supra,* 133 Cal.App.3d at page 371, the court referred to *People* v. *Regalado* and said, "Similarly, the probation report here indicated the longstanding nature of appellant's drug addiction and his failure to deal with the problem." The trial court imposed the upper term and the appellate court affirmed.

In *People* v. *Lambeth, supra,* 112 Cal.App.3d 495, the defendant committed a pharmacy robbery to steal narcotics and syringes. (In *Simpson,* the defendant burgled a liquor store to obtain liquor.) Similar to the defendants in *Simpson* and *Regalado,* the *Lambeth* defendant had also escaped from a Kansas half-way house. The *Lambeth* court affirmed a sentence to the upper term for robbery, citing *Regalado* and stating: "[¶] The probation report abundantly established that appellant was a long-time career criminal with little desire to change." (*Id.,* at p. 501.)

In *Simpson,* despite the defendant's youth (approximately 23 years of age), the court was dealing with a defendant with juvenile and adult convic-

---

v. *Regalado, supra,* 108 Cal.App.3d 531; *People* v. *Gaskill* (1980) 110 Cal.App.3d 1 [167 Cal.Rptr. 549] (possession of a sawed-off shotgun, upper term imposed despite a history of alcoholism); *People* v. *White* (1981) 118 Cal.App.3d 767 [173 Cal.Rptr. 575] (rape, middle term imposed despite the defendant's contention that his drug and alcohol usage was a mitigating factor); *People* v. *Reid* (1982) 133 Cal.App.3d 354 [184 Cal.Rptr. 186] (robbery, upper term imposed despite the defendant's longstanding drug addiction). See also *People* v. *Lambeth* (1980) 112 Cal.App.3d 495 [169 Cal.Rptr. 193] (robbery of pharmacy, narcotics and syringes taken; without citing *Simpson,* upper term imposed despite longstanding drug addiction); *People* v. *Bejarano* (1981) 114 Cal.App.3d 693 [173 Cal.Rptr. 71] (burglary, without citing *Simpson,* court refuses to consider heroin addiction as a mitigating circumstance).

tions for petty theft, joyriding, drunkenness, car theft, grand theft from the person (purse snatch), burglaries, and escape. As in *Regalado, Reid,* and *Lambeth,* he had demonstrated a total lack of interest in changing his life style and in rehabilitation. Like the others, Simpson had escaped from a rehabilitation facility, and was continuing a pattern of criminal conduct to support his substance abuse.

Those cases that have distinguished *Simpson* hold that where the defendant has a pattern of substance abuse and addiction or alcoholism, where the defendant has failed to deal with the problem despite opportunities to do so, where he continues in criminal conduct to support his pattern of substance abuse, an aggravated or upper term is appropriate. *Simpson* held that, as a matter of law, the defendant's alcoholism was a factor in mitigation. That holding is plainly contrary to the holdings of the other cases cited above.

As a policy matter, when a defendant has a drug addiction or substance abuse problem, where the defendant has failed to deal with the problem despite repeated opportunities, where the defendant shows little or no motivation to change his life style, and where the substance abuse problem is a substantial factor in the commission of crimes, the need to protect the public from further crimes by that individual suggests that a longer sentence should be imposed, not a shorter sentence. For example, the felony drunk driver who is suffering from an uncontrolled alcoholism should be sentenced to a longer term, not a shorter one, in order to prevent him from driving under the influence again. The robber or burglar who is taking either drugs or money to buy drugs to support his addiction, and who shows little incentive or ability to deal with his drug abuse problem, should be prevented from committing further burglaries or robberies for a longer time, not a shorter time. That was precisely the analysis that the trial judge went through in *People* v. *Simpson,* which analysis was held erroneous. The holding in *Simpson* that the need to support the alcoholism by repeated burglaries is a mitigating factor in those burglaries is plainly wrong. The holdings in *Regalado, Reid,* and *Lambeth* are plainly correct.

The error in the *Simpson* decision is that it concluded that if the defendant's mental or physical condition of alcoholism was a substantial factor in the commission of the crime, then it necessarily "significantly reduced his culpability for the crime" or made the crime "partially excusable." *Lambeth, Regalado,* and *Reid* reject this analysis. Alcoholism or drug addiction may be regarded as a "mental or physical condition"; but a separate finding that the condition significantly reduced culpability or partially excused the conduct must be made. Where those or any other substance abuse problems are out of control, the defendant either engages in crime to support his substance abuse habit, or uses that habit as an excuse or explanation for

continued criminal conduct,[3] and the defendant shows little incentive or ability to change, the substance abuse habit does not "significantly reduce" his culpability for the crime, nor does it make the criminal conduct "partially excusable."

Indeed, where, as in *Simpson, Reid, Regalado,* and *Lambeth,* the substance abuse problem has led to behavior described as aggravating factors in rule 421, such as a pattern of criminal conduct dangerous to society, violations of parole or probation, and unsatisfactory performance on probation or parole, the addiction or alcoholism is properly considered as a part of those aggravating factors because it suggests a high probability of further depredations on the public whenever the defendant is again out of custody.

For these reasons, we conclude that *People* v. *Simpson* was wrongly decided, and we decline to follow it.

This does not mean that alcoholism or drug addiction can never be considered as a mitigating factor under rule 423a(4) or 423b(2). We can readily conceive of defendants who have made a serious effort to cope with their substance abuse problems but who, having committed a crime during a time of relapse, might well be considered for a lower term under those rules. A drug dependency growing out of medical treatment might be considered to reduce culpability under some circumstances. There may be other circumstances where the defendant's alcohol or drug addiction might be considered in mitigation. But, where that addiction has simply provided the defendant with a continuing incentive or excuse to commit crimes, we see no reason why that addiction should be considered as a circumstance in mitigation.

■ Defendant next contends that, inasmuch as the jury found that he was not guilty of inflicting great bodily injury upon the victim, the court improperly considered the injury to the victim as an aggravating factor. In *People* v. *Takencareof* (1981) 119 Cal.App.3d 492 [174 Cal.Rptr. 112], the defendant was charged with two counts of burglary and one count of arson. He pleaded guilty to one count of burglary, but he was acquitted of the other charges after a jury trial. When sentencing the defendant for the burglary, the trial court referred to the great harm caused by the arson as a circumstance that warranted denial of probation. (*Id.,* at p. 497.) The appellate court held that, inasmuch as the defendant was acquitted of the arson, the trial court could not base its burglary sentence upon the conclusion that the defendant actually committed arson. (*Id.,* at p. 500.)

---

[3] This might be termed the "Flip Wilson defense": "The devil [drugs or alcohol] made me do it."

Defendant argues that the jury's finding here should also preclude the trial court's use of the victim's injury as an aggravating circumstance in sentencing. The situation here, however, is quite different from that considered in *People* v. *Takencareof, supra*. Here, the jury's verdict is not inconsistent with the trial court's finding that the victim was elderly and fragile and defendant used gratuitous violence, force, and cruelty upon the victim. Here, there is no question that defendant kicked the victim and beat the victim after the victim was knocked down. All the jury found was that these acts did not inflict "great bodily injury" within the meaning of section 1203.09. The jury did not find that the victim suffered no injury at all or that the defendant did not inflict any injury. The trial court's finding in aggravation is supported by the evidence, and it is not contrary to the jury's finding.

■ Defendant asserts that the court erred in reading CALJIC No. 2.21 as one of the jury instructions.[4] He argues that there was no evidence to support the inference that he testified falsely on a material point, and the instruction therefore impermissibly altered the prosecution's burden of proof.

The same arguments were made in *People* v. *Johnson* (1986) 190 Cal.App.3d 187 [237 Cal.Rptr. 479] and the arguments were rejected. (*Id.,* at pp. 192-194.) Suffice it to say that the instruction applies equally to all witnesses and it simply tells the jurors what they must do if they find that a witness willfully lied in one material part of his testimony: They may reject the whole testimony of such a witness, but they are not required to. They may nevertheless believe the remainder of the witness's testimony if they find the probability of truth favors his testimony in other particulars. The instruction also cautions the jurors not to conclude that a witness is lying simply because his testimony is contradicted. The instruction explains that it is not uncommon to misrecollect, and it is a common experience to fail to remember. Then, too, two witnesses to the same incident may recall it differently in perfect innocence.

Moreover, there were inconsistencies in defendant's own testimony and conflicts between his testimony and that of the other witnesses which just-

---

[4]CALJIC No. 2.21 (4th ed. 1979) provides: "A witness willfully false in one material part of his testimony is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you shall believe the probability of truth favors his testimony in other particulars. [¶] However, discrepancies in a witness' testimony or between his testimony and that of others, if there were any, do not necessarily mean that the witness should be discredited. Failure of recollection is a common experience; and innocent misrecollection is not uncommon. It is a fact, also, that two persons witnessing an incident or a transaction often will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance."

ified the giving of the instruction as a guide to the jury in evaluating, not only the defendant's testimony, but also the testimony of the prosecution witnesses. For example, Marsden testified that he had never seen defendant before. Defendant, however, testified that he had shared drinks with the victim earlier in the evening. Marsden testified that defendant took $330 in a wallet. Defendant testified that he took only $3 in a coin purse, having picked it up when a coin purse was dropped. At the conclusion of the chase, defendant was found in possession of only the coin purse and $3. Marsden testified that Patten returned Marsden's wallet to him. Patten denied ever seeing the wallet. CALJIC No. 2.21 is a correct statement of the law; it was properly given as a guide to the jury in evaluating these discrepancies as well as others appearing in the record. (See *People* v. *Hempstead* (1983) 148 Cal.App.3d 949, 956 [196 Cal.Rptr. 412], and cases there cited.)

■ Finally, defendant contends the restitution fine must be vacated because there is nothing in the record to demonstrate that the court made a rational choice in determining the amount of the fine.

A trial court need not state the precise reasons for fixing the amount of a restitution fine. (*People* v. *Gray* (1986) 187 Cal.App.3d 213, 222 [231 Cal.Rptr. 658]; *People* v. *Romero* (1985) 167 Cal.App.3d 1148, 1150, 1156 [213 Cal.Rptr. 774].) A trial court is required to state reasons only when it waives a restitution fine under section 1202.4. (*Romero, supra,* at p. 1156.)

Nevertheless, the amount of the fine must be supported by the record. (*Id.,* at p. 1157.) Here, the record would support a finding that defendant profited by the robbery in the approximate amount of $330, and the victim lost approximately $330. Under the circumstances, the $300 restitution fine imposed by the trial court was not an abuse of discretion.

The judgment is affirmed.

Blease, Acting P. J., and Carr, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 6, 1988.