Filed 3/17/15  P. v. Andreas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C076463 |
| Plaintiff and Respondent, | (Super. Ct. No. CM040481) |
| v. | |
| PHILIP MARK ANDREAS, | |
| Defendant and Appellant. | |

Sentenced to the upper term in state prison following a plea agreement, defendant Philip Mark Andreas contends (1) the trial court abused its discretion by applying improper aggravating factors and failing to consider mitigating factors, and (2) trial counsel was ineffective in failing to object to the court's reliance on improper aggravating factors.  We affirm.

1

# FACTUAL AND PROCEDURAL BACKGROUND

A felony complaint filed January 29, 2014, charged defendant with stalking (counts 1 & 2; Pen. Code, § 646.9, subd. (a)),[1] making criminal threats (counts 3 & 4; § 422, subd. (a)), vandalism causing over $400 in damage (count 5; § 594, subd. (a)), and misdemeanor elder abuse (count 6; § 368, subd. (c)). Arthur Andreas was the alleged victim as to counts 1 and 6; Laurenil Andreas was the alleged victim as to counts 2 and 4; both were the alleged victims as to counts 3 and 5. Alisa Andreas was also an alleged victim as to count 4.

Alleged victims Arthur and Laurenil Andreas wrote the following letter to the trial court:

"Your Honor[,] we are writing to you concerning our son [defendant].

"Our son . . . has had a drug and alcohol abuse problem for a very long time, and in addition he is [b]ipolar and also has Lyme disease. For the most part he has not received any medical and professional help for his condition.

"He has struggled academically and socia[l]ly. His decision making skills and judgment are very poor. For the last fifteen years he has bounced around from place to place, living with friends and relative[s] for very short periods, and in the streets and in storage sheds, where we have paid to have his personal belongings stored.

"Whenever he has had money or anything of value, he quickly loses them, including his automobiles, to questionable people who he befriends. He has never been able to hold a job for more than a few months and has no employment record. He has incurred a huge amount of debt, which he will never be able to pay off, including to the court systems in different counties in California. He has a very distorted sense of reality

---

[1] Undesignated statutory references are to the Penal Code.

2

and is always talking of grandiose things he is going to do and money he is going to make.

"Presently he has no friends or relatives that will take him in or help him. We have always been and were the last source of support and help for [defendant]. We love him dearly and have always tried to protect him but we are old, tired, and out of options on how to help him. As we can no longer be involved in his life, since we had to file a restraining order against him, we hope that the court can find an appropriate treatment for his drug and alcohol addictions.

"We do know that when he doesn't use drugs or alcohol he is not violent and is very kind and helpful to others.

"Thank you for reading this long letter and considering these facts as you decide his case."

Defendant entered into a plea agreement under which he pleaded guilty to counts 3 and 5, with the remaining counts to be dismissed with *Harvey*[2] waivers. The agreement stated that defendant could receive a sentence of up to three years eight months in state prison. The parties stipulated that the probation report would provide the factual basis for the plea.

According to the probation report, during an argument between defendant and his parents, he threatened them, used a chair to smash the back window of their car, and damaged the car's rear side panel. An insurance estimate assessed the damage to the car at $2,274.61.

The probation report stated that defendant admitted damaging his parents' car, but said: "My family was talking down to me, being demeaning, and disrespectful. I just can't deal with that." He blamed his family for the incident and said they were not being

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

truthful about it. He was not remorseful about anything. He denied being a drug addict or asking his family for money, saying they were also lying about that and were "conspiring" against him. He denied being violent toward family members or harassing them. Despite his plea, he denied being a threat to their safety.

Defendant admitted he had been "out of control" in the past when he drank, but claimed he had not consumed alcohol since 2006. He claimed he last used methamphetamine three years ago. He admitted to smoking marijuana daily "to calm down or to relax." He had done a 90-day residential alcohol treatment program in 2001, but left after 67 days because of physical altercations with other residents.

Defendant stated he was willing to comply with the terms and conditions of probation. However, the probation officer viewed him as an unsuitable candidate for probation for the following reasons: "[T]he defendant was an active participant in the instant offenses. The instant offenses are viewed as more serious than other instances of the same crimes, as the defendant nearly struck one of the elderly victims with the chair as he damaged the vehicle. The defendant inflicted emotional injury upon the victims, as they reported fearing for their safety and the safety of their family. He took advantage of a position of trust, as the victims were his parents. He was not remorseful for his actions. He plans to continue contacting the victims when he is released from custody. His record of criminal conduct is increasing in frequency and seriousness. The defendant has violated his previous grants of probation. His prior performance on probation is unsatisfactory. The defendant is viewed as a danger to others if he is not imprisoned. The defendant's lack of family support, concerning drug use, possible mental health status, denial of his actions despite his guilty plea, and prior unsatisfactory performance on probation makes the defendant's ability to comply with the terms and conditions of a grant of probation questionable."

The probation report recommended the upper term because aggravating factors outweighed mitigating factors. The one mitigating factor was that these were defendant's

4

first sustained felony convictions.  In aggravation, the report identified six considerations: (1) defendant's act of vandalism caused over $2,000 worth of damage; (2) the victims were particularly vulnerable, as they were elderly (69 and 60 years old); (3) defendant took advantage of a position of trust as the victims' son; (4) his behavior indicates he is a violent person and a serious danger to society; (5) his convictions are numerous and are increasing in seriousness;[3] and (6) he had regularly violated previous grants of probation, making his prior performance on probation unsatisfactory.

At sentencing, victim Laurenil Andreas made the following statement:

"We would just like to tell our son [defendant] that you have misinterpreted our love and patience for you as some kind of weakness on our part.  And for too many years now we and your sister have suffered threats and abuse and violence as we kept trying to help you and reach you and protect you.  We wanted to avoid you going to court or prison, but you have given us no choice but to be here today.

"Your drug and alcohol habit has been so out of control for such a long time that you were willing to terrorize and vandalize our property, and even try to destroy the house we just bought you for you to live in.

"We are at a time in our lives where we are old, tired and vulnerable.  We should be depending on you for support and help, but instead we have to be protected from you with a restraining order.

"It has been very difficult for us to see you in the condition you are now and have been for the last 15 years.  We have invested our lives, or resources and energy to give you a decent, educated and productive life.  You have refused our help.  [¶] . . . [¶]

---

[3] Defendant had 11 misdemeanor convictions dating from 1999 to 2013, plus one unsuccessful termination of probation.

". . . You have turned on us and have actually verbally and physically hurt us. That not only breaks our hearts, but the actual sadness makes it difficult for us to function on a daily basis.

"We hope this Court can impose a drug and alcohol rehab program, and that you will be willing to do the very hard work that it would take to turn your life around. We do know that when you are sober, you are kind and caring and a hard worker. And the few times that you have been sober, you're a delight and a joy to have around.

"As parents who love you, we will be praying and cheering that you may be successful in whatever lies ahead for you."

Defense counsel asked for probation under strict terms and conditions, including a drug and alcohol rehabilitation program. Counsel noted that defendant, aged 35, had no prior felonies. Counsel stated that he had spoken with the parents and they did not want defendant sent to prison. Counsel disputed the probation report's claim that defendant showed no remorse, asserting that defendant had said he wanted to turn his life around.

The prosecutor called defendant's statements to the probation officer "very concerning" in that they showed "complete lack of remorse," "continual blame-shifting," and "lack of insight." Given defendant's claim of feeling disrespected and "talked down to" by his parents, the prosecutor questioned what would happen if someone in the general public or in a rehabilitation program "talks down to him."

The trial court denied probation based on the nature, seriousness, and circumstances of the crime, the vulnerability of the victims, defendant's prior criminal record, his lack of remorse, and his inability to comply with reasonable terms of probation.

The trial court then found that aggravating circumstances outweighed mitigating circumstances, justifying the upper term. In aggravation, defendant's parents were particularly vulnerable, the crime involved damage of great monetary value, defendant took advantage of a position of trust, the crimes were against defendant's parents and

6

sister, defendant had engaged in conduct that indicates a serious danger to society, his prior convictions as an adult are numerous and increasing in seriousness, and his prior performance on probation was unsatisfactory. In mitigation, this was defendant's first felony conviction.

The trial court designated count 3 (criminal threats) as the principal term and imposed the three-year upper term in state prison. The court designated count 5 (felony vandalism) the subordinate term and imposed eight months (one-third the midterm), consecutive to count 3. The court imposed various fines and fees, including restitution to Arthur and Laurenil Andreas in the amount of $2,274.61.

Defense counsel objected to imposing more than the minimum amounts of certain fees on the ground that defendant lacked the ability to pay; the trial court reduced those fees to the minimum. Counsel did not object to any other aspect of the sentencing.

## DISCUSSION

Since defendant did not object to the trial court's reasoning as to aggravating and mitigating factors, his claim of error is forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 356 [complaints about manner in which trial court exercises sentencing discretion].) We therefore address it only in light of his contention that the trial counsel's failure to object constituted ineffective assistance.

To win reversal for ineffective assistance of counsel, a defendant must show that trial counsel fell below a minimum standard of competence and that a more favorable outcome was likely but for counsel's lapses. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) We conclude counsel was not ineffective because there was no meritorious ground for an objection to the trial court's exercise of sentencing discretion.

Trial courts have wide discretion in weighing aggravating and mitigating factors. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) A single valid aggravating factor justifies the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 815 (*Black*).) The trial court may rely on any aggravating circumstances reasonably related to the court's

7

decision, whether or not spelled out in the California Rules of Court. (*People v. Sandoval* (2007) 41 Cal.4th 825, 848.) We review the trial court's sentencing choices for abuse of discretion. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

Significantly, defendant does not challenge three of the aggravating circumstances expressly relied on by the trial court: (1) that his violent conduct made him dangerous to society; (2) that his adult convictions were numerous and of increasing seriousness; and (3) that his prior performance on probation was unsatisfactory. (Cal. Rules of Court, rules 4.421(b)(1), (b)(2), (b)(5).)[4] Any one of those aggravating circumstances was sufficient to justify the upper term, even if others the court relied on were improper. (*Black, supra*, 41 Cal.4th at p. 815.)

Moreover, defendant's attacks on the other aggravating factors the trial court cited are unpersuasive.

Defendant asserts that his parents were not particularly vulnerable victims merely because of their age, but ignores the fact that their relationship to him and their long-term attempts to keep him out of the criminal justice system, as well as their age, emboldened him to commit the present crimes against them.

Similarly, defendant asserts that the fact that he is the son and brother of the victims does not show he took advantage of a position of trust to commit his crimes. However, had he not been a member of their family whom they had tried to protect and nurture, he would not have been in a position to threaten his parents and vandalize their car in the first place.

Lastly, defendant asserts that his vandalism offense did not cause great monetary damage because "the damage to the vehicle was $2,274.61" and "it is inconceivable that $1,875 [the amount by which this sum exceeds the minimum amount for felony

---

[4] Further references to rules are to the California Rules of Court.

8

vandalism] constitutes " 'great monetary damage.' " Defendant cites no authority for this proposition, and we agree with the trial court that monetary damage over four times the minimum for felony vandalism is "great."

Defendant's arguments as to mitigating factors are no more persuasive. He asserts that the trial court must have failed to consider any such factors it did not mention, but it is well settled that when a court says it has reviewed and considered documents that address factors in mitigation, the court is deemed to have considered those factors even if it does not mention them. (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1318.) Furthermore, defendant's alleged mitigating factors are unsupported by the record.

Defendant claims that he suffers from a mental condition that reduces his culpability for his offenses (rule 4.423(b)(2)) and that he acknowledged wrongdoing at an early stage of the criminal process (rule 4.423(b)(3)). However, the probation report did not find either of those factors to apply, for good reason.

Defendant does not specify what "mental condition" he suffers from that should be deemed to reduce his culpability, but the probation report and defendant's mother's statements to the court show that he has avoided or resisted substance abuse treatment for 15 years. When a defendant has a longstanding substance abuse problem and makes no attempt to get treatment for it, the substance abuse itself becomes an aggravating factor. (*People v. Reyes* (1987) 195 Cal.App.3d 957, 963-964.)

Moreover, defendant did not admit wrongdoing. On the contrary, he blamed the victims for his criminal conduct and accused them of lying about him and conspiring against him.

Lastly, defendant claims his parents did not want him sent to prison. But even if this might count in mitigation, defendant cites no evidence to support it. He cites only his counsel's hearsay ascription of that sentiment to his parents at sentencing, which is not evidence. Nothing in the actual statements of defendant's mother shows unequivocally that his parents did not want him to go to prison.

9

Since any objection to the trial court's sentencing decision would have lacked merit, trial counsel was not ineffective for failing to make such objection.

## DISPOSITION

The judgment is affirmed.


      RENNER      , J.


We concur:


     NICHOLSON    , Acting P. J.


     BUTZ      , J.