Filed 3/5/21  P. v. Clark CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>KAYLA CLARK,<br><br>        Defendant and Appellant. | A160193<br><br>(Napa County<br>Super. Ct. No. 19CR002735) |

Kayla Clark filed this appeal after pleading guilty to multiple offenses relating to an automobile collision, the most serious of which was driving with a blood alcohol level over 0.08 percent and causing injury.  (Veh. Code, § 23153, subd. (b) (section 23153(b)); statutory references are to this Code unless otherwise indicated).  Clark contends the trial court abused its discretion by imposing the maximum sentence for her crimes, and that the court also violated her constitutional rights by imposing fines and fees that she is unable to pay.  We affirm the judgment and sentence.

1

# BACKGROUND

## I. The September 2019 Collision[1]

The incident that gave rise to Clark's convictions occurred on September 15, 2019, while she was driving on State Route 29 in Napa County. At the time, Clark was on probation for two prior driving under the influence (DUI) convictions and was driving on a suspended license.

At around 2:00 a.m., a person driving north toward Napa noticed Clark, who was driving very slowly and drifting from side to side in her lane. Then Clark turned her car around and began driving south in her northbound lane, at which point the witness called 9-1-1. Before officers responded, Clark collided head-on with a vehicle driven by Mr. B., causing serious injury to both drivers. When police arrived at the scene, Mr. B. had already been taken to the hospital. Before Clark was transported, officers noticed a strong order of alcohol emanating from her breath and person.

When police arrived at the hospital, Mr. B. was unable to give a statement because he was in critical condition, having sustained multiple fractures and a traumatic brain injury. Clark was conscious and yelling profanities at medical staff. The officers could still smell a strong odor of alcohol emanating from Clark, and her speech was slurred. She admitted that she had consumed alcohol and been driving, but claimed she " 'wasn't that drunk and knew exactly what was going on.' " A blood draw administered at 3:46 a.m. showed that Clark's blood alcohol level was .245. Clark was placed under arrest on September 15, but was hospitalized for several days due to her injuries. On September 18, she asked the officer who was guarding her about the victim and "began to tear up" when she learned

_____

[1] Because Clark pleaded guilty to her crimes, we derive facts about the incident from the probation report.

about his critical condition.  Clark said she was very sorry and hoped the victim would forgive her.  She acknowledged having an alcohol problem but declined to give a formal statement.

On November 14, 2019, Mr. B. was released from the hospital for homecare.  Although his condition had improved, caring for him required his family to move to a ground floor apartment and rent a hospital bed.  Family reported that he would need future surgeries, his brain injury was "very apparent," and his disabilities were permanent.

## II.  Clark's Convictions

In an amended complaint, Clark was charged with three felonies:  DUI causing injury (§ 23153, subd. (a)); driving with a blood alcohol level over 0.08 percent causing injury (§ 23153(b)); and driving into oncoming traffic, causing injury (§ 21651, subd. (c)).  The counts charging Clark with violating section 23153 incorporated supplemental allegations that Clark has two prior DUI convictions, which subjected her to heightened punishment.  (§ 23566, subd. (a).)  Clark was also charged with a misdemeanor for driving while her driving privilege was suspended due to a prior DUI conviction (§ 14601.2, subd. (a)), and an infraction for driving with a blood alcohol level over .01 while on probation for DUI (§ 23154, subd. (a)).

The amended complaint also includes three special allegations.  First, as to each felony charge, the People alleged that Clark personally inflicted great bodily injury upon Mr. B., causing him to become comatose due to brain injury and to suffer paralysis.  (Pen. Code, § 12022.7, subd. (b).)  The other two special allegations pertained to Clark's blood alcohol concentration when she committed the section 23153 violations, which was allegedly 0.20 percent or more within the meaning of section 23538, and 0.15 percent or more within the meaning of section 23578.

3

Initially, Clark entered a plea of not guilty to all charges, but she changed her plea on February 27, 2020, the day before a preliminary examination was scheduled to commence. Clark pleaded guilty to driving with a blood alcohol level over .08 causing injury. As part of this plea, Clark admitted the two prior DUI convictions. She also admitted the special allegation that her blood alcohol level was 0.20 percent or more, and the special allegation regarding great bodily injury, which made this offense a serious and violent felony (Pen. Code, § 1192.7, subd. (c)). Clark also pleaded guilty to the felony of driving into oncoming traffic causing injury, misdemeanor driving when her driving privilege was suspended due to a prior DUI conviction, and the infraction of driving with a blood alcohol level over .01 percent while on probation for DUI.

The trial court found that there was a factual basis for Clark's pleas and that they were freely and voluntarily given. Then it referred the matter to the Probation Department for a Pre-Sentence Report.

## III. Clark's Sentence

A probation report submitted on March 26, 2020 recommended that Clark be sentenced to state prison because she is a danger to society. According to the report, several probation officers made this recommendation after participating in a case discussion that included consideration of Clark's history, the current offense, and the victim's injuries.

The Department reported that Clark has a criminal record dating back to 2001, which includes multiple DUI convictions. Clark told the probation officer she began drinking alcohol at age 14, but had recently limited her drinking to times when she was "upset." Clark asked for help with her alcohol use, and expressed a willingness to participate in any program that probation deemed necessary. Regarding her current offenses, Clark recalled

4

that prior to the collision, she had an argument with her boyfriend, who was verbally abusive. Then she drove to Vallejo to visit her cousin who was celebrating a birthday. She had three shots of vodka at her cousin's house before going to a bar and consuming two drinks and then to a different bar where she had another shot. She tried to get a ride home from family, but when nobody answered her call, she decided to drive herself because she did not feel that she was too impaired.

During her interview with the probation officer, Clark was very emotional and expressed concern for the victim and his family. She stated that she was hoping the court would grant her probation so she could " 'get back on [her] feet to pay [the victim] back.' " She acknowledged her " 'bad decision,' " expressed regrets, and described the incident as a wake-up call. Clark reported that she had a full time job and could return to work as soon as she was released. She wanted to make up for the harm she caused to the victim, his family, and her family.

The probation report lists multiple criteria indicating that Clark is unsuitable for probation including that the circumstances of the crime were elevated as compared to other instances of the same crime; Clark used her vehicle as a deadly weapon; the victim appears to have been vulnerable at the time of the incident; Clark inflicted major physical and emotional injuries on the victim; the monetary loss to the victim exceeded $1,500,000; Clark was an active participant in the crime; Clark has a pattern of regular and increasingly serious criminal conduct and a history of unsatisfactory performance on probation; and there was a likelihood that if Clark was not imprisoned, she would pose a danger to others.

In terms of sentencing, the probation department did not identify any mitigating circumstances, but reported that circumstances in aggravation

5

include these facts: The crime involved great violence; Clark inflicted permanent injuries on the victim; the victim was particularly vulnerable, as Clark's conduct could not have been anticipated; Clark has numerous and increasingly serious convictions; Clark was on probation for her third and fourth DUI convictions when she committed the current offense; Clark's prior performance on probation was unsatisfactory; and she caused great monetary damage by committing her offense.

On March 26, 2020, the prosecutor filed a sentencing memorandum requesting that the court sentence Clark to the maximum prison term allowed by law. The People argued this punishment was consistent with the relevant sentencing factors and guidelines and necessary for public safety in light of Clark's criminal record, which includes multiple DUI convictions. The People acknowledged Clark was technically eligible for probation but argued a grant of probation was so obviously inappropriate that analysis of the pertinent factors was unwarranted. They argued the maximum sentence was justified by multiple aggravating factors, which outweighed the mitigating factor that Clark had admitted her crimes.

The sentencing hearing was held on April 1, 2020. The court heard first from defense counsel, who requested that Clark be sentenced to probation or, if the court insisted on prison, that Clark receive a minimum sentence. Arguing for probation, defense counsel outlined the following circumstances: Clark pled guilty to "the sheet" and promptly admitted wrongdoing; she was remorseful from the outset, even at the accident scene; her family, including a young son, were also victims; Clark had a job waiting for her and wanted to start paying restitution to the victim; and she demonstrated that she was ready to comply with probation.

6

Next, Clark addressed the court directly, expressing regret for almost killing the victim and herself by driving under the influence. She expressed sorrow to the victim, his family, and her family as well. She said that she is not just a mother but also the provider for her household and she "just want[ed] to work," pay back the victim as much as she could, and never drink another alcoholic beverage. She acknowledged having a "drinking problem," described the incident as a "real wake up call," and asked the court for a "program" to help with her alcohol problem.

The prosecutor argued that Clark's expression of remorse and request for help came too late and did not ring true. The prosecutor also disputed many defense claims, including the suggestion that a prison sentence would prevent Clark from making restitution, pointing out Clark could work while she was in prison.

Mr. B.'s wife also addressed the court, giving a detailed account of the accident, her husband's extensive injuries, and the lasting, devastating impact on her family. Then an excerpt from the diary of Mr. B's 12-year-old son was read into the court record.

After the matter was submitted, the court indicated that it had read and considered the probation report and the People's sentencing memorandum and evidence, and then proceeded to announce the sentence. First, the court denied Clark probation due to the severity of the crime and the victim's injuries and the fact that Clark was on probation for driving while intoxicated when she committed the current offenses. Then the court announced sentence for each conviction and admitted allegation. It imposed an upper term of four years for driving with a blood concentration over .08 percent and causing injury, a middle term of two years for driving into oncoming traffic, which was stayed pursuant to Penal Code section 654, and

7

it dismissed the misdemeanor and infraction convictions. As to the special allegation of causing the victim great bodily injury involving brain injury or permanent paralysis, the court imposed the required consecutive five-year term, for an aggregate sentence of nine years in prison.

The court also ordered Clark to pay several fines and fees that were recommended in the probation report, including: a $40 court security fee (Pen. Code, § 1465.8); a $30 criminal conviction assessment (Govt. Code, § 70373), a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)); and an additional $300 restitution fine that was suspended unless parole was later revoked (Pen. Code, § 1202.45.)[2]

## DISCUSSION

## I. The Upper-Term Sentence

Clark challenges the trial court's decision to impose a four-year upper term for driving with a blood alcohol level over 0.08 percent and causing injury.

### A. Additional Background and Clark's Contentions

As noted, when the trial court announced Clark's sentence, it addressed each conviction separately. The court began its consideration of Clark's section 23153(b) conviction with this pointed remark: "This is a two, three,

---

[2] The People contend that although restitution fines are listed in the minute order and abstract of judgment, the trial court did not actually impose them because they were "never orally pronounced." This contention is incorrect. The record shows that the trial court used a list of probation report recommendations as its reference for imposing fines and fees, and a copy of those recommendations with handwritten notes was filed along with the court's minute order. Recommendation #8 was to impose a suspended $300 Penal Code section 1202.45 restitution fine, and #9 requires payment of a $300 Penal Code section 1202.4(b)(2) restitution fine. At the sentencing hearing, the court made an oral pronouncement that it was "Imposing conditions number eight and nine" in this case.

four triad. And when I look at this case, and the seriousness of this case, and whether it's a mitigated, or midterm, or aggravated term, I can't think of really a more egregious instance of this offense."

In its explanation of reasons for selecting an aggravated term, the court first observed that Clark had been warned in the past about the penal consequences of drinking and driving, as evidenced by her history of "D.U.I. pleas," and yet she continued to drink and drive. Next, the court referred to the victim impact evidence, including the statement from Mr. B.'s wife. The court observed that, although Clark did not kill Mr. B., the loss to him and his family is real, significant, and permanent. The court also observed that Mr. B. was a particularly vulnerable victim, noting that he was out driving for Uber and traveling in the proper direction. Then, turning to Clark's history of DUI convictions, the court observed that when Clark committed the current offense, she had an outstanding arrest warrant and was on probation for her third and fourth DUI offenses.

On appeal, Clark contends the trial court's selection of an upper-term sentence cannot be sustained because it made four distinct errors when considering aggravating and mitigating factors. Specifically, Clark argues, the court should not have relied on (1) the nature and severity of victim's injuries, (2) Clark's criminal history, or (3) the particular vulnerability of the victim, and, on the other hand, the court erred by failing to consider that (4) alcohol addiction is a mitigating factor.

## B. Forfeiture

Clark concedes that she did not object to any aspect of the court's explanation for imposing an upper term at the sentencing hearing. But she contends her trial counsel preserved this claim for review by arguing that Clark should receive probation or at most a minimum sentence. Without

9

authority, Clark posits that her trial counsel's argument was sufficient to put the trial court on "notice" that the defense did not think that any factor the court might use to impose a greater sentence was legitimate.

Settled law rejects this theory. " 'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." ' " (*People v. Scott* (2015) 61 Cal.4th 363, 406.) Thus, Clark forfeited her claim of sentencing error.

## C. Effective Assistance of Counsel

Clark contends her trial counsel rendered ineffective assistance by failing to object to the upper-term sentence on each of the grounds she asserts here. "[A] defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent." (*People v. Scott* (1994) 9 Cal.4th 331, 351.) Thus, we address the merits of Clark's arguments in the context of her claim for ineffective assistance of counsel, which imposes a heavy burden on her "to demonstrate the inadequacy of trial counsel." (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that,

but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

### 1. The Victim's Injuries

Clark contends the nature and severity of Mr. B's injuries could not be counted as an aggravating factor because the infliction of "great bodily injury" was an element of the five-year enhancement imposed on Clark pursuant to Penal Code section 12022.7, subdivision (b).

Under the Rules of Court, an aggravating circumstance includes the fact that a crime "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, Rule 4.421(a)(1); all rule references are to these rules.) This circumstance can be used as an aggravating sentencing factor whether or not it is charged or chargeable as an enhancement. (*Ibid*.) However, the trial court may not use the fact that a crime involved great bodily injury as a reason for imposing an upper term sentence while also using the same fact to impose an enhancement for great bodily injury. (*People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1735 (*Gutierrez*).)

We conclude that a competent defense attorney could have concluded that the trial court did not violate these principles in the present case. The trial court began its explanation for choosing the aggravated term by observing, "I'm quite certain that Ms. Clark has been advised during the past during her D.U.I pleas that if she were to continue to drink and drive and someone were to be killed as a result of that, that she would be charged with murder, which would carry 15 to life." Then, acknowledging that Mr. B. had managed to survive the car crash, the court observed that "there was a real loss here, a significant loss, in a way that the victims in this case will never again be the same." This is not a reference exclusively to the great bodily

11

injury that Clark inflicted.  The court was considering the devastating impact this crime had on Mr. B.'s family life *and* the evidence that, because Clark had been often warned of the potential consequences of driving under the influence, her actions involved a "high degree of . . . callousness."  (Rule 4.421(a)(1).)

Clark relies on *People v. Coleman* (1989) 48 Cal.3d 112, 164–165.  In that death penalty appeal, the court affirmed convictions for multiple offenses, but remanded for resentencing as to some of the defendant's non-murder crimes.  One issue on appeal pertained to the sentence imposed for a felony assault; the trial court added a three-year enhancement for intentionally inflicting great bodily injury on the victim even though it had selected an upper term based on the aggravating factor that the assault involved " 'great violence, great bodily harm, acts disclosing a high degree of cruelty, viciousness and callousness.' "  (*Id*. at p. 164.)  Acknowledging this was error, the *Coleman* court stated that the use of a fact to impose an upper term was an " 'an adequate reason for striking the additional term of imprisonment.' "  (*Id*. at p. 165.)

*Coleman* is distinguishable on its facts because the defendant's infliction of great bodily injury was the act the trial court used to find that the defendant's conduct disclosed cruelty, viciousness, and callousness.  Here, by contrast, the trial court focused on Clark's habitual drunk driving, which was callous conduct about which she had been warned and that caused a panoply of devasting consequences, including but not limited to the infliction of great bodily injury.  Thus, this case is more analogous to *Gutierrez*, where the defendant received an upper term sentence for attempted murder and an enhancement for great bodily injury under section 12022.7.  (*Gutierrez, supra*, 10 Cal.App.4th at p. 1735.)  Affirming that sentence, the *Gutierrez*

court found that dual use of the fact that the victim suffered great bodily injury was not permitted, but the error was harmless because other aggravating factors cited by the trial court supported the sentence, including that the defendant's conduct demonstrated "a high degree of cruelty, viciousness, and callousness." These distinct aggravating facts applied because the defendant's conduct, which included a vehicle chase that endangered other drivers, passengers, and pedestrians, was "reprehensible to society." (*Id.* at pp. 1735–1736.)

### 2. Clark's Criminal History

Clark next contends the trial court erred by using Clark's prior DUI convictions as an aggravating sentencing factor because they are an element of her crime. Again, we disagree that the failure to make this objection at the sentencing hearing amounted to deficient representation.

Rule 4.420(d) states: "A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term." Here, Clark was convicted of violating section 23153(b), which makes it a crime to drive with a blood alcohol level of .08 percent and cause injury. Although having prior DUI convictions is not an element of this crime, prior DUI convictions can affect a defendant's punishment for a section 23153 violation. In this case, for example, Clark admitted she suffered two separate violations of section 23152 during the 10-year period prior to the commission of her current offense. Therefore, she was sentenced under section 23566, subdivision (a), which provides for a term of two, three or four years. The trial court was not permitted to use the fact of this enhancement as a reason for selecting the upper term. (Pen. Code, § 1170, subd. (b).) However, the court could properly base its decision on an aggravating factor supported by

13

evidence "other than that which gave rise to the enhancement." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775, italics omitted.)

Applying these principles, we reject Clark's argument that the trial court used her two prior DUI convictions as an aggravating factor. The court observed that Clark had four prior DUI convictions, not two; that she had an outstanding arrest warrant; and that at the time of the offense she was on probation for her third and fourth DUI offenses. Each of these facts are separately aggravating, as they establish that Clark's prior convictions are numerous and of increasing seriousness (rule 4.421(b)(2)), that Clark was on probation when she committed the current offense (rule 4.421(b)(4)), and that Clark's prior performance on probation was unsatisfactory (rule 4.421(b)(5)).

### 3. The Victim's Vulnerability

Clark disputes the trial court's finding that Mr. B. was a "particularly vulnerable" victim within the meaning of rule 4.421(a)(3). To be particularly vulnerable under this rule, the victim must be vulnerable in a " 'special' " way or to an " 'unusual degree,' " to an " 'extent great than in other cases.' " (*People v. Clark* (1990) 50 Cal.3d 583, 638.) Here, Clark argues that Mr. B. was not more vulnerable than any other victim of a drunk driver, citing *People v. Bloom* (1983) 142 Cal.App.3d 310, 322 (*Bloom*).

Counsel's failure to argue that Mr. B. was not a particularly vulnerable victim did not deprive Clark of competent representation. Although in *Bloom* the appellate court found insufficient evidence to support the trial court's determination that the victim had been particularly vulnerable, *Bloom* found this error harmless since the trial court had given two other valid reasons for its sentencing decision, which was "appropriate and well-deserved." (*Bloom, supra*, 142 Cal.App.3d at p. 322.) So, here, the trial court gave at least two valid reasons for its sentencing decision and made a decision that was

14

appropriate and well-deserved.  The court did not dwell on the victim's vulnerability, and a competent defense attorney could have concluded that disputing Mr. B.'s vulnerability served no practical purpose and risked shifting further attention to the callousness of Clark's conduct, which was an independent aggravating factor.

In a related argument, Clark faults the trial court for relying on the "significant loss" suffered by Mr. B.'s family.  Clark concedes that victim impact evidence was properly considered at sentencing (Pen. Code, § 1170, subd. (b)), but she argues the court misused that evidence by relying on the fact that Mr. B. is a husband and father to justify its selection of an upper-term sentence.  According to Clark, the court's consideration of Mr. B.'s family composition was clear error under *People v. Levitt* (1984) 156 Cal.App.3d 500, 516–517.  *Levitt* held that the fact that a homicide victim's family was "irredeemably bereaved" could not be relied on to aggravate the defendant's sentence in a case where the family's bereavement did not bear a rational relationship to the defendant's culpability.  (*Id*. at p. 517; but see *People v. Johnson* (2016) 62 Cal.4th 600, 649, fn. 6.)  The *Levitt* court reasoned that the defendant's level of culpability does not depend on "fortuitous circumstances such as the composition of his victim's family, but on circumstances over which he has control," such as making a choice to "act callously," to commit a crime while on probation, or to "amass a record of offenses."  (*Ibid*.)  In the present case, the trial court referred to the victim impact evidence not as evidence of bereavement, but because it was relevant to show the nature and extent of harm that Clark inflicted on the survivor of her crime.  This evidence was relevant to a proper evaluation of the Clark's choice to drive with a blood alcohol level that was three times the legal limit

15

despite the fact that her license had been suspended and she was on probation for two recent DUI convictions.

### 4. Clark's Alcoholism

Finally, Clark contends the trial court erred by failing to consider whether her alcoholism was a mitigating factor that lessened her culpability for purposes of sentencing. She bases this claim on *People v. Simpson* (1979) 90 Cal.App.3d 919 (*Simpson*).

In *Simpson,* the defendant appealed his upper term sentence for burglary of a liquor store, arguing that the trial court erred by failing to consider his alcoholism as a mitigating factor. (*Simpson, supra*, 90 Cal.App.3d at p. 921.) The appellate court agreed based on the following reasoning: "While it is true that intoxication caused by alcoholism does not excuse the commission of a crime [citations], it has long been recognized by this court that many alcoholics are disabled in the literal sense, are precluded from holding a job, need encouragement, are distressed, are dependent, and need assistance. [Citation.] It follows that before sentencing an alcoholic defendant under the [determinate sentencing law], the trial court must consider the possibility that his alcoholism is a circumstance in mitigation . . ., and must then weigh this factor along with the other relevant circumstances." (*Id. at* p. 928.)

Although *Simpson* does not hold that alcoholism is a mitigating factor, it requires trial courts to consider the "possibility" whether the defendant's alcoholism is a mitigating factor. (*Simpson, supra*, 90 Cal.App.3d at p. 928.) Subsequent authority establishes that this requirement does not apply when the evidence shows the defendant has been unwilling to address a long-term problem. (*People v. Reyes* (1987) 195 Cal.App.3d 957, 961–963 (*Reyes*) [collecting cases].)

16

*Reyes* did not just distinguish *Simpson*, but found the case was wrongly decided.  (*Reyes, supra,* 195 Cal.App.3d. at p. 963.)  *Reyes* rejects the *Simpson* court's assumption that if a defendant's alcoholism is a substantial factor in the commission of the crime, that factor necessarily reduces the defendant's culpability.  The *Reyes* court reasoned that, for example, when the defendant has failed to address a substance abuse problem and that problem was a substantial factor in the commission of a drunk driving offense, important policy concerns justify a longer rather than shorter sentence due to the need to protect the public from further crimes.  (*Ibid*.)  *Reyes* also holds that when a defendant's alcoholism has led to "a pattern of criminal conduct dangerous to society, violations of parole or probation, and unsatisfactory performance on probation or parole," it is properly considered an aggravating sentencing factor under the governing rules.  (*Id*. at p. 964.)

In the present case, Clark's alcoholism was not a mitigating factor in light of her history of drinking and driving, her prior convictions for this crime, and her behavior in committing the current offense.  (*Reyes, supra*, 195 Cal.App.3d at pp. 961–963.)  Since a *Simpson* objection to the court's selection of the upper term would have been futile, the failure to make one did not deprive Clark of competent representation.

### 5.  Prejudice

To the extent the trial court relied on any improper sentencing factors, Clark's ineffective assistance claim fails because she cannot establish a reasonable probability that she would have received a more favorable sentence if her trial counsel had made the objections she asserts for the first time on appeal.

Contrary to Clark's appellate arguments, the trial court did not limit itself to the specific factors that Clark deems improper.  Instead it relied on

17

categories of evidence that implicate several aggravating factors, at least some of which are indisputably valid. For example, the court observed that when Clark committed this offense, she had an outstanding warrant and was on probation for two prior crimes, which shows that Clark's prior performance on probation was unsatisfactory. Moreover, the Probation Report listed additional pertinent factors, including that Clark's crime caused great monetary harm, which exceeded $1,500,000. (Rule 4.421(a)(9).)

The existence of valid aggravating factors precludes Clark from carrying her burden of proving prejudice because a single aggravating circumstance is sufficient to support an upper term sentence. (*People v. Osband* (1996) 13 Cal.4th 622, 728.) Clark disputes this conclusion, arguing that we cannot know what the court would have done if the alleged errors had been brought to its attention. We disagree; the trial court made its intention clear by stating that it could not conceive of a more "egregious" violation of section 23153, thus demonstrating its commitment to imposing an aggravated term.

## II. Restitution Fines and Court Fees

Clark contends the trial court violated her due process rights by requiring her to pay a statutory minimum $300 restitution fine, a $30 criminal conviction assessment, and a $40 court security fee. According to Clark, the failure to hold an ability-to-pay hearing before imposing statutory fines or fees constitutes reversible error under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

Clark forfeited her *Dueñas* claim by failing to object to any fine or fee when they were imposed. (See *People v. McCullough* (2013) 56 Cal.4th 589, 596–597; *People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Avila* (2009) 46 Cal.4th 680, 729.) In *Dueñas,* the misdemeanant disputed her ability to

pay either a restitution fine or court fees, requested an ability-to-pay hearing, and produced evidence putting her ability to pay at issue. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1162–1163.) Here, Clark was sentenced after *Dueñas* was decided and yet she did not dispute her ability to pay a restitution fine or court fees or request an ability-to-pay hearing.

Clark contends her claim is cognizable despite her failure to object because her constitutional rights were violated. This argument ignores binding authority establishing that sentencing-related fees and fines do not implicate the narrow category of rights that are excepted from the forfeiture rule. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856; see also *People v. McCullough, supra,* 56 Cal.4th at p. 593.)

Alternatively, Clark argues her claim is not forfeited because the " '[f]ailure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal.' " (Quoting *People v. Downey* (2000) 82 Cal.App.4th 899, 912.) Clark does not point to anything in this record to suggest that the trial court failed to comprehend or exercise its discretion in this case.

Finally, Clark argues that if the forfeiture rule applies, she was denied the effective assistance of counsel. We reject this contention, as Clark makes no effort on appeal to overcome a presumption that she received effective assistance by demonstrating that her trial counsel's representation fell below an objective standard of reasonableness resulting in demonstrable prejudice. (*People v. Lucas, supra,* 12 Cal.4th at pp. 436–437.)

Clark's claim that the trial court violated *Dueñas* rests on an improper assumption that she was unable to pay a statutory minimum restitution fine and $70 in court fees. Furthermore, the appellate record contains evidence

that Clark had financial resources. Clark herself made representations that she had full-time employment and was the provider for her family. Clark also fails to consider the fact that she would have the opportunity to earn wages while serving her prison sentence. (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139 (*Johnson*).) Finally, Clark overlooks that declining to request a hearing regarding her ability to pay the relatively small fine and court fees was consistent with the defense strategy at sentencing, which was to request probation so Clark could use her earning capacity to pay victim restitution.

Clark intimates that the fact she was represented by court-appointed counsel establishes her inability to pay court assessments. We disagree. When considering a defendant's ability to pay a restitution fine, the court is not limited to consideration of a discrete time period and is not precluded from considering prison wages. (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1396–1397.) The ability to pay a restitution fine does not necessarily require " 'existing employment or cash on hand' " because the court may also consider the " 'defendant's ability to pay in the future,' " including her ability "to obtain prison wages and to earn money after [her] release from custody." (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; see also *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376–1378; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.) "Thus, a defendant may lack the 'ability to pay' the costs of court-appointed counsel yet have the 'ability to pay' a restitution fine." (*Douglas,* at p. 1397.)

As this court has previously explained, the *Dueñas* defendant presented compelling evidence that she was an indigent probationer whose inability to pay court assessments resulted in ongoing unintended punitive consequences. (*Johnson, supra,* 35 Cal.App.5th at pp. 138–139.) These consequences of

nonpayment implicated due process principles because they constituted additional punishment due *solely to the fact* that the defendant was indigent. (*Dueñas, supra*, 30 Cal.App.5th at p. 1168.) Clark's factual situation was markedly different, and she does not articulate why her trial counsel should have anticipated that the trial court might be amenable to a due process objection to the restitution fine and court fees imposed in her case.

Even if Clark could establish that defense counsel should have made a *Dueñas*-type objection, Clark has not demonstrated that the failure to object resulted in actual prejudice. Absent concrete evidence that Clark's inability to pay these fines will have an unforeseen punitive consequence, we cannot find that it is reasonably probable the trial court would have stricken her restitution fine or court fees if an objection had been lodged.

## DISPOSITION

The judgment and sentence are affirmed.


TUCHER, J.


WE CONCUR:

POLLAK, P. J.
STREETER, J.


*People v. Clark* (A160193)

21