Filed 4/29/21  P. v. Hassenzahl CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>VINCENT LEE HASSENZAHL,<br><br>     Defendant and Appellant. | A159644<br><br>(Lake County Super. Ct. No. CR954919) |

After police began following a vehicle in which defendant Vincent Hassenzahl was a passenger, he threw a firearm from the vehicle.  A jury found Hassenzahl guilty of unlawfully possessing a firearm as a felon and concealing evidence, and the trial court sentenced him to three years in prison.  Hassenzahl argues that the trial court should have inquired into an incident in which a juror purportedly overheard Hassenzahl speaking to a witness during a recess, that the trial court erred in failing to hold a hearing to determine whether to replace his appointed counsel, that the trial court abused its sentencing discretion, and that trial counsel provided ineffective assistance by failing to object to the fines and assessments imposed at sentencing on the ground that Hassenzahl lacked the ability to pay them.  We affirm.

1

## BACKGROUND

On July 17, 2019, Clearlake Police Officer Chris Kelleher began following a vehicle near Pomo School and observed Hassenzahl throw a silver object from the passenger seat. Officer Kelleher conducted a traffic stop of the vehicle and determined that the silver object was a firearm with three rounds of ammunition in the magazine.

On November 20, the Lake County District Attorney filed an amended information charging Hassenzahl with unlawfully possessing a firearm as a felon (Pen. Code, § 29800, subd. (a))[1] (count 1), unlawfully possessing ammunition as a felon (§ 30305, subd. (a)(1)) (count 2), and concealing evidence (§ 135) (count 3).

After a brief trial, the jury found Hassenzahl guilty on counts 1 and 3, and not guilty on count 2. The trial court sentenced Hassenzahl to three years in prison on count 1 and a concurrent 180 days on count 3. The trial court also imposed the statutory minimum restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $80 (§ 1465.8), and a criminal conviction assessment of $60 (Govt. Code, § 70373).

Hassenzahl appeals.

## DISCUSSION

Hassenzahl argues that (1) the trial court should have inquired into an incident in which a juror purportedly overheard Hassenzahl speaking to Officer Kelleher during a break in the trial, (2) the trial court erred in failing to hold a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), (3) the trial court abused its sentencing discretion in imposing the upper term on count 1, and (4) trial counsel provided ineffective assistance by failing to

---

[1] Further undesignated statutory references are to the Penal Code.

object to the fines and assessments imposed at sentencing on the ground that Hassenzahl lacked the ability to pay them.

## I. *Hassenzahl is Estopped From Arguing There Was Cause To Discharge a Juror*

After a recess, the following exchange took place on the record:

"MR. FLESCH [prosecutor]: I just want to say on the record there was some sort of statement made in front of the jury or a juror that I saw outside of the courtroom when we took a recess. It appeared that the defendant had engaged a witness, the witness in a couple statements. I noticed that there was a juror present. I would like to delve into that and see what was said.

"THE COURT: Which juror was present?

"MR. FLESCH: It appeared to be an alternate—at least one of the alternates, and I didn't see—I didn't know that there was any other juror present.

"THE COURT: Which witness was involved in the conversation?

"MR. FLESCH: Officer Kelleher.

"THE COURT: Okay. Any objection to me asking Officer Kelleher what was stated, Mr. Quinn?

"MR. QUINN [defense counsel]: What?

"THE COURT: Any objection to me asking Officer Kelleher what was stated?

"MR. QUINN: No proper objection exists.

"THE COURT: Officer Kelleher, if you could tell me what was discussed.

"THE WITNESS: Yes. As we went out to recess, the defendant was behind me, made a statement on the lines of I don't understand. You have a personal judge against me.

3

"THE DEFENDANT: No, no, no.

"THE COURT: Hold on.

"THE WITNESS: At that point I just went in the bathroom and didn't engage with him.

"THE COURT: And that was the only statement that was made?

"THE WITNESS: Yeah.

"THE DEFENDANT: No. I said it seems like they got a personal issue.

"THE COURT: Hold on. Mr. Hassenzahl, we're going to take care of this, but we have to do it in an orderly manner. Speak to your attorney about it. And if you need to do it privately, you can go outside.

"MR. QUINN: Okay. So I think he's saying that he did make a comment and that was I think directed against the prosecution in general. And I didn't exactly hear what it was, but I immediately told Mr. Hassenzahl that he has to keep his mouth shut when the jurors are around. And I did see that there was one juror that was in the hallway maybe, I don't know, 30 or 40 feet away.

"THE COURT: Mr. Flesch, how did you want me to handle that?

"MR. FLESCH: It was noted on the record. I would just ask that he be admonished not to do that in front of jurors.

"MR. QUINN: You can't be talking about the case in front of jurors at all, period.

"THE DEFENDANT: No. It wasn't the case. It feels like you two got something—

"THE COURT: Hold on. The court reporter—hold on. The court reporter has to take all this down. So when your attorney is talking, you can't talk. Just let your attorney make his statements. So go ahead, Mr. Quinn.

4

"MR. QUINN: Well, the point is you can't talk about the case in front of jurors, anything about it. So you can't say anything about the case in front of jurors because that's—you know what I'm saying?

"THE DEFENDANT: I understand that.

"MR. QUINN: So a comment like that can't be made. Can't make any comment about the case—about anything regarding this case in front of a juror and any more than the DA can make some personal comment about you in front of the jurors, okay, even if it's not technically about the facts of this matter, okay? All right.

"THE COURT: Okay. The jury—I did previously instruct the jury they can only base their decisions based on evidence received during the trial. So if they follow that instruction, they're not going to consider that statement. Is anyone requesting any further instructions or—

"MR. FLESCH: No. I'll just state on the record that I do not have any personal vendetta against the defendant. I don't know—

"THE DEFENDANT: I didn't say 'me.' That's it. Just being taken out on me, you know?

"THE COURT: Any reason we can't bring the jury out?

"Hearing none, Mr. Bailiff can you bring the jury out."

Hassenzahl argues that this exchange put the trial court on " 'notice that good cause to discharge a juror may exist,' " thereby triggering the trial court's duty to " ' "make whatever inquiry is reasonably necessary" to determine whether the juror should be discharged.' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1409, quoting *People v. Espinoza* (1992) 3 Cal.4th 806, 821; see § 1089.)

5

" 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court.' " (*People v. Cleveland* (2001) 25 Cal.4th 466, 478, quoting *People v. Ray* (1996) 13 Cal.4th 313, 343.) We find no abuse of discretion in the trial court's decision not to investigate whether any jurors should have been discharged because of this incident. The record suggests the juror was an alternate, who was "30 or 40 feet away," and there is no indication that the juror heard Hassenzahl's statement to Officer Kelleher.

In any event, we conclude that Hassenzahl is estopped from obtaining a reversal based on the effect his statement to Officer Kelleher may have had on any juror, because "as a matter of policy, a defendant is not permitted to profit from his or her disruptive or otherwise improper misconduct." (*People v. Harris* (2013) 57 Cal.4th 804, 857; see *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1030 ["Defendants may not complain on appeal about the possible effect on jurors of their own calculated misdeeds"]; *People v. Hines* (1997) 15 Cal.4th 997, 1054 ["[d]efendant is barred from complaining about any conceivable misconduct by [juror] in accepting [defendant's] call because he invited any 'misconduct' by making the telephone call in the first place"].) Hassenzahl attempts to distinguish these cases, arguing that the rule "applies to defendants who misbehave with respect to the juror or jurors in question." Hassenzahl does not provide any reasoning or authority for this limitation on the rule, and in fact, in *People v. Lewis and Oliver*, *supra*, the defendants "assaulted counsel in court and disrupted the prosecution's case"—misconduct not directed at any particular juror. (39 Cal.4th at p. 1030.) The "commonsense" rationale of preventing a defendant from obtaining a reversal based on the effect his own intentional misconduct may

6

have had on the jury applies with equal force to the misconduct at issue here. (*Ibid*.)  Hassenzahl's argument fails.

## II.    *The Trial Court Did Not Err in Failing to Hold a* Marsden *Hearing*

After the prosecution's case concluded, defense counsel indicated that the defense would not present any evidence and the jury was excused from the courtroom.  The following colloquy then took place:

"THE COURT:  The jury has left the courtroom.  Okay.  We'll be in recess until 1:15.  At 1:15 we'll finalize the jury instructions.  I'll meet with counsel in chambers to go over the jury instructions.  Mr. Hassenzahl is ordered to be back at 1:15.

"THE DEFENDANT:  Your Honor, I'm not okay one witness for him.

"MR. QUINN [defense counsel]:  Well, that's why—

"THE DEFENDANT:  I could have done better by myself, you know what I mean?

"MR. QUINN:  Okay.

"THE COURT:  Mr. Quinn, do you need some time?

"MR. QUINN:  I do."

Hassenzahl argues that this exchange triggered the trial court's duty under *Marsden*, *supra*, 2 Cal.3d 118, to permit him to state his reasons for dissatisfaction with his court-appointed attorney—a duty that arises " '*when the defendant in some manner moves to discharge his current counsel*.' " (*People v. Sanchez* (2011) 53 Cal.4th 80, 87, quoting *People v. Lucky* (1988) 45 Cal.3d 259, 281 (*Lucky*).)  Triggering the duty does " 'not necessarily require a proper and formal legal motion, but at least some clear indication by defendant that he wants a substitute attorney.' " (*Id*. at pp. 87–88, quoting *Lucky*, *supra*, 45 Cal.3d at p. 281, fn. 8.)  However, "[t]he mere fact

7

that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing." (*Lucky*, *supra*, 45 Cal.3d at p. 281.)

Hassenzahl argues that the colloquy above "indicated concern regarding his attorney's representation" and triggered the trial court's obligation to hold a hearing under *Marsden*. We do not agree. Hassenzahl did not provide any "clear indication" that he wanted a substitute attorney, nor did he request to explain to the trial court specific ways in which he felt that his counsel's performance had not been satisfactory, as in *Marsden*. At best, his brief comments can be read to suggest that he was unhappy with the fact that his counsel did not call any witnesses and thought that he could have "done better by myself." This amounts to a disagreement about trial tactics—not a request for substitute counsel that would trigger the trial court's duty under *Marsden*. (See *People v. Richardson* (2009) 171 Cal.App.4th 479, 485 [*Marsden* hearing not required where defendant sent presentencing letter to court requesting new trial and complaining about adequacy of trial counsel's representation but did "not mention a desire to obtain substitute counsel"].)

## III. *The Trial Court Did Not Abuse Its Discretion in Imposing the Upper Term*

Hassenzahl argues that the trial court abused its sentencing discretion by failing to consider both his drug addiction and the "unusual" circumstances of the offense—namely, his contention that the jury's not guilty verdict on count 2 suggested that his possession of the firearm was only momentary—as factors in mitigation.

In advance of sentencing, the probation department prepared a report that detailed Hassenzahl's numerous previous drug related offenses, noted

that he had admitted he was under the influence of methamphetamine at the time of the offense, and described him as an "an intravenous drug user who states he has never attended a substance abuse treatment program," who admitted committing various crimes to "support his drug addiction." The report also indicated that Hassenzahl had been a user of methamphetamine since the age of 12, marijuana since the age of eight, and heroin from the ages of 20 to 29. The report found numerous aggravating factors, including several prior convictions and prior unsatisfactory performance on probation and parole, and no circumstances in mitigation, and recommended that Hassenzahl be sentenced to the upper term of three years.

At sentencing, defense counsel told the trial court that Hassenzahl had been contacting substance abuse programs and was "someone who's really in serious need of rehabilitation, not just drug treatment but vocational rehabilitation or habilitation, vocational training, and training in life skills." Defense counsel also argued that because the jury found Hassenzahl not guilty of possession of ammunition, "the jury felt that it was not proven that he knew the gun was loaded," which was consistent with the defense's theory that Hassenzahl possessed the gun only momentarily.

After hearing argument, the trial court found as follows, in line with the probation report's recommendation:

"I do find the following circumstances in aggravation: The defendant's prior convictions as an adult [and] in sustained petitions in juvenile delinquency proceedings are numerous. He has served two prior prison terms. He was on post release community supervision when the crime was committed and his prior performance on probation and parole was unsatisfactory. I find no circumstances in mitigation. Therefore, the factors

9

in aggravation outweigh those in mitigation both in number and in weight. For that reason I'm imposing the upper term.

"I am making the following findings: The defendant was under the influence of a controlled substance at the time of the commission of the offense. The defendant has a demonstrated history of substance abuse." The trial court then followed the recommendation of the probation department and sentenced Hassenzahl to the upper term of three years on count 1.

A trial court's exercise of its discretion in selecting a lower, middle, or upper term sentence is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid*.) "Sentencing courts have wide discretion in weighing aggravating and mitigating factors. [Citation.] Indeed, a trial court may 'minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.]" (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258 (*Lai* ).) " ' "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Lai*, at pp. 1258–1259, quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978.)

To begin with, because Hassenzahl did not object to the probation report or to the trial court's sentencing decisions on the grounds he now raises, his claims of sentencing error are forfeited. (See *People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons

10

cannot be raised for the first time on appeal"]; *People v. Evans* (1983) 141 Cal.App.3d 1019, 1021 ["any objection to the contents of a probation report . . . relied on by the sentencing court must be made in the superior court or is waived"].)

Furthermore, the trial court was not required to consider Hassenzahl's substance abuse as a mitigating factor, because "drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511; see *People v. Reyes* (1987) 195 Cal.App.3d 957, 960–964.) The probation report described a long history of substance abuse and noted that Hassenzahl "states he has never attended a substance abuse treatment program." And the prosecutor argued that because Hassenzahl was released from custody in October and did not begin attending Narcotics Anonymous until December 5, his "desire [was] not to get help" but rather "to not be incarcerated." Under these circumstances, the record does not undermine the presumption that the trial court considered Hassenzahl's substance abuse and the jury's not guilty verdict on count 2, but was not persuaded that either should be treated as a mitigating factor under the circumstances of this case. (See *People v. Weaver* (2007) 149 Cal.App.4th 1301, 1317–1318, overruled on another ground in *People v. Cook* (2015) 60 Cal.4th 922; *In re Handa* (1985) 166 Cal.App.3d 966, 973 [where an alleged factor in mitigation "may not be mitigating under the circumstances of a particular case . . . the court may find an absence of mitigating factors and need not explain the reason for its conclusion"].) Hassenzahl has failed to demonstrate any abuse of the trial court's sentencing discretion.

## IV. *Hassenzahl Has Not Demonstrated Ineffective Assistance of Counsel*

As noted, at sentencing the trial court imposed the statutory minimum restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $80 (§ 1465.8), and a criminal conviction assessment of $60 (Govt. Code, § 70373). Hassenzahl argues that his trial counsel provided ineffective assistance in failing to object to these fines and assessments on the ground that Hassenzahl lacked the ability to pay them, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1166–1169 (*Dueñas*).

We begin with a discussion of *Dueñas*, *supra*, 30 Cal.App.5th 1157, whose facts are now well-known. Velia Dueñas was a homeless, indigent mother of two who suffered from cerebral palsy, and who subsisted primarily on public aid. She was on her fourth conviction for driving with a suspended license, against a background of being unable to pay previous court-ordered assessments that had led to more jail time and license suspensions. Dueñas was placed on probation and again ordered to pay various mandatory fees and assessments. She requested a hearing to determine her ability to pay the fees, and the court concluded it had no discretion to waive the assessments or the fees. (*Id*. at pp. 1162–1163.)

The Court of Appeal reversed, concluding that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." The Court of Appeal also held that, although the trial court is required by section 1202.4 to impose a restitution fine, "the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the

defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)

*Dueñas* has spawned a plethora of cases, many of which have distinguished it on the facts before them, with many others holding that *Dueñas* was wrongly decided. A relatively early case illustrating all this is the 2-1 opinion in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844 (*Kopp*), where the majority opinion analyzed the issue based on the distinction between fines and charges that are punitive in nature and those that are not. And as to the former, the majority held they should be challenged under the excessive fines clauses in the United States and California Constitutions. (*Id*. at pp. 96–97.)

Shortly after it decided *Dueñas*, that same court clarified that defendant had the burden in the first instance to "present evidence of his or her inability to pay the amounts." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490; accord *People v. Santos* (2019) 38 Cal.App.5th 923, 934; § 1202.4, subd. (d) ["A defendant shall bear the burden of demonstrating his or her inability to pay"].)

The Supreme Court denied review in *Dueñas*, but in November, 2019, granted review in *Kopp*, *supra*, 38 Cal.App.5th 47, with the "issues" described in the case summary as follows: "Petition for review after the Court of Appeal affirmed in part and reversed in part judgments of conviction of criminal offenses. The court limited review to the following issues: (1) Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? (2) If so, which party bears the burden of proof regarding the defendant's inability to pay?"

13

While *Dueñas* holds as it does, other courts disagree, and there is no Supreme Court case holding that Hassenzahl has a right to a hearing. But even if he did, his claim would still fail.

The law regarding Hassenzahl's ineffective assistance of counsel claim is settled. " ' "A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions. [Citations.] 'Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to effective assistance.' " [Citations.] It is defendant's burden to demonstrate the inadequacy of trial counsel. [Citation.] We have summarized defendant's burden as follows: " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " [Citation.] [¶] Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: " 'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.' " [Citation.]' [Citation.] If the record on appeal ' " 'sheds no light on why

14

counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected," ' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 875–876.)

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Hassenzahl has not met his burden, not in several respects. It is enough to note that he has not shown prejudice, that the "result . . . would have been different." According to the probation report, Hassenzahl was 31 at the time of sentencing and had job skills in construction, landscaping, and as a handyman, with previous periods of employment in those fields. In light of that, it is hard to see that Hassenzahl could not at present pay the $440 in assessments—and Hassenzahl has certainly not shown it.

Were that not enough, it would appear Hassenzahl could pay the $440 from his future wages. (See *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 [court may consider ability to pay in the future including "ability . . . to earn money after his release from custody"].) Nothing in the record indicates Hassenzahl would be unable to work or ineligible for prison work assignments. And "[p]rison wages range from $12 to $56 per month, depending on the prisoner's skill level," meaning Hassenzahl could earn

15

between approximately $432 and $2,016 during his 36 months in prison. (*Ibid.*; see *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.) Under these circumstances, Hassenzahl has failed to demonstrate a reasonable probability of a different result had his trial counsel objected to the $440 in fines and assessments on the ground that Hassenzahl lacked the ability to pay them.

## DISPOSITION

The judgment is affirmed.

                                            _____

                                            Richman, J.

We concur:


_____

Kline, P.J.


_____

Miller, J.


*People v. Hassenzahl* (A159644)

17